JOHNSON, Judge.
The plaintiff was a guest passenger in the automobile of her son, Salvador J. Mancuso. The Mancuso car was struck in the rear by an automobile driven by Charles N. Bruce, Jr., the minor son of defendant, Charles N. Bruce. The plaintiff was injured and this suit is against the father, Charles N. Bruce, Paul S. Sehlin-ger, Sr., who was the grandfather of young Bruce and the owner of the car he was driving, and The New Amsterdam Casualty Company, public liability insurer of Salvador J. Mancuso.
On the trial of the case in the Civil District Court for the Parish of Orleans, judgment was rendered in favor of the plaintiff on May 15th, 1961, against the New Amsterdam Casualty Company and the suit was dismissed as to Paul S. Sehlinger, Sr. and Charles N. Bruce. The New Amsterdam Casualty Company has appealed.
The record shows that on July 4th, 1961, the plaintiff died. There is no suggestion that her death was in any way related to her injuries received in this accident. There were six heirs at law including her son, Salvador J. Mancuso, Jr. These survivors were, by proper order, substituted as parties plaintiff in this proceeding and they have filed an answer to the appeal of the Insurance Company, asking that the award be increased.
*553 The car in which Mrs. Mancuso was a passenger was travelling towards the lake on Elysian Fields Avenue. Dreux Street crosses the lakebound side of Elysian Fields Avenue at right angles but comes to a dead end at the riverbound side of Elysian Fields Avenue. Mancuso turned left into Dreux Street, crossed the Elysian Fields neutral ground and stopped the automobile before entering the riverbound side of Elysian Fields Avenue to travel towards the river. Mancuso’s own testimony is somewhat confusing and contradictory, but a careful reading of it makes it entirely clear that when Mancuso stopped the automobile before entering Elysian Fields Avenue, he looked to his right to determine the condition of traffic. We believe a true recitation of his testimony is that when he looked to the right he saw three automobiles travelling towards the river on Elysian Fields Avenue. Fillmore Avenue is a short block (about 200 feet) toward the lake from Dreaux Street. At the time Mancuso looked to his right and saw the three automobiles mentioned, he also saw the automobile which turned out to be the one driven by young Bruce. Man-cuso says the Bruce car was a little beyond the Fillmore intersection. Mancuso then waited until the three cars, travelling toward the river, had passed. He then entered Elysian Fields without looking any more to his right to determine the position of the Bruce car. Mancuso excuses himself from making any further observation of the traffic situation to his right by saying that “the other cars passed in front of me and at the time I had glanced and saw this car far enough away to make a turn after the three cars passed me.
“Q. And then you looked at the Bruce car before the three cars passed you, or while the three cars passed you ?
“A. Yes, sir.
“Q. But you did not look back?
“A. No, sir.”
Counsel for defendant argued that this statement can be interpreted to the effect that Mancuso did look to his right again after the three cars had passed him, but we cannot read it that way. In several other places he positively and definitely acknowledged that he never looked again to* his right after the three cars passed.
When the three cars he mentioned passed Mancuso, he pulled into the southbound traffic lanes of Elysian Fields making a wide sweep to veer toward the river on the outside right lane. While he was at about a forty-five degree angle in his turn, with the front of his car a little over the middle of the two lanes, the Bruce car had progressed at high speed and struck the right rear corner of the Mancuso car with the left front corner of the Bruce car. The impact knocked the Mancuso car forward and Mancuso lost control of it, striking a fire-plug at which time Mrs. Mancuso fell to the pavement and the automobile came to a stop on the neutral ground of Elysian Fields when it hit a tree.
We say that if Mancuso had looked to his right at the time he entered Elysian Fields with the Bruce car as far away as Fillmore Avenue, Mancuso would have had the right to assume that the Bruce car was travelling at a lawful rate and being at that distance from Dreux Street, Mancuso could lawfully enter the intersection to turn left; but that is not the situation. Mancuso saw these cars to his right and sat there until three of them passed. He turned into Elysian Fields without making any other observation, which, in our opinion, amounts to gross negligence. If he had looked again to his right as he entered the intersection he would have seen that the Bruce car had made such progress at high speed that it was not safe to drive out in front of it. Mancuso never saw the Bruce car after his one glance to the right when the Bruce car was a block away.
Just about the time young Bruce reached Fillmore Avenue he passed to the *554 left of a station-wagon being driven by Robert E. Tardo and in which several people were' passengers. Tardo and other passengers testified that when Bruce passed them he was. going so fast that his speed was the subject of conversation among those in the station-wagon. They estimated Bruce’s speed at between 70 and 75 miles per hour. When young Bruce passed the station-wagon the left wheels of his automobile ran into the curb along the neutral-ground which seemed to cause the Bruce car to veer off to the right. The Bruce car was about a quarter of the short block from Dreux Street when the Mancuso car pulled into Elysian Fields from a stopped position. (This would put it about 50 feet from Dreux Street.) Mancuso was in the turn when the Bruce car struck the rear of his car.
Mrs. Rogers had her car parked on the west side of Elysian Fields in the block between Fillmore and Dreux. She came to her car and walked to the front of it to look at a tire which she thought might need air. She heard the roar of the Bruce car and she saw it coming zigzagging to'ward her at a terrific speed and seemed to be out of control. She screamed and ran to get out of the way of it. The car made a swerve to its left and struck the right rear corner of the Mancuso car.
Young Bruce testified that he did not see the Mancuso car in Dreux Street, stopped at the intersection of Elysian Fields. He said that he saw the car when it was entering Elysian Fields and was in the turn to its left when the cars collided. He said also that when the Mancuso car came into Elysian Fields Avenue he, Bruce, was about 20 or 25 feet from Dreux Street. He put on his brakes which slowed him up, but said he did not attempt to stop because he did not think Mancuso was going all the way over into the right lane. He said he could have stopped if he had known the car was going into the other lane. Bruce should have known the Mancuso car would go to the right lane. Bruce should not have attempted to pass Mancuso on the right.
Therefore, we conclude that both Man-cuso and Bruce, Jr., were guilty of concurring negligence which caused the accident and resulting damage.
Defendant, Paul S. Sehlinger, Sr., had loaned his automobile to Bruce, Jr., and at the time the grand-father admonished his grand-son that the car was to be used only by the grand-son to deliver papers on his paper route. The grand-son disobeyed the instructions and was using the car at the time of the accident apparently in a joy ride for his personal pleasure. The judgment dismissing the suit as against defendant Sehlinger is correct.
The trial judge awarded $2500.00 for personal injuries to plaintiff. The expert medical evidence, stated briefly, shows that plaintiff’s scalp was pulled back 2 or 3 inches which revealed two palpable fractures of the frontal bone of the skull, but the fractures were shallow and not shown in the X-ray pictures. Plaintiff remained in the hospital for fourteen days but continued to receive medical treatment until August 21, when she was discharged as fully recovered, with the exception of some complaints of dizziness thereafter. We cannot say that there was manifest error by the trial court in fixing the amount at that figure. The judgment granted an additional $981.07 for reimbursement of medical expenses which plaintiff’s counsel admits is correct.
The judgment dismissing the suit as to defendant, Paul S. Sehlinger, Sr., is affirmed.
The judgment dismissing the suit as against defendant Charles N. Bruce is reversed.
The judgment in favor of plaintiff and against New Amsterdam Casualty Company is affirmed and recast, and it is
NOW ORDERED, ADJUDGED AND DECREED that judgment be in favor of *555 the substituted plaintiffs and against Charles N. Bruce and New Amsterdam Casualty Company, individually and in solido, in the full sum of $3,481.07, together with legal interest from date of judicial demand until paid and for all costs; said defendants to pay costs of this appeal.
Affirmed in part, reversed in part, and recast.